## Case No. 11,470.

### In re PURCELL.

[18 N. B. R. 447.] [1]

District Court, S. D. New York. Dec. 10, 1878.

BANKRUPTCY — COMPOSITION — SET-OFF — ACCOMMODATION PAPER—CREDITORS ENTITLED TO VOTE.

1. The statute allows any composition which is satisfactory to the requisite majority of the creditors, and which is for the best interests of all concerned.

2. Nothing can be set off, under section 5073, against the principal of a debt due a creditor, except a debt due from the creditor to the bankrupt.

3. Where the bankrupt had given a creditor his accommodation notes to an amount larger than the claim of such creditor, which were discounted and afterwards proved against the estate by the holders, held, that an assignee would have the right to set off the dividend paid upon the notes against the dividend due such creditor, and recover from him the balance of the amount so paid, and the same equitable right obtains in the case of a composition.

4. At a first meeting in composition fifteen creditors were assembled, representing seventy thousand and eighty-three dollars and ninety-six cents. A composition of one per cent. was accepted by a vote of eight creditors, representing fifty-six thousand two hundred and seventeen dollars and fifty-two cents. One of those voting in the affirmative was the assignee of an insolvent firm, and voted upon a claim of four thousand one hundred and twenty-seven dollars and fifty-eight cents. The bankrupt had lent his accommodation notes, to the amount of ten thousand dollars, to the firm, who discounted them for their own use, and the notes were proved against the estate by the holders and constituted part of the debts represented at the meeting. Held, that the assignee had no interest in the composition and should not be regarded as a creditor who had any voice in its acceptance; that the composition was not approved by the requisite majority, within the true meaning of the statute.

[This was a motion by Michael Purcell for an order for a second meeting in composition.]

2 [From 2 N. B. R. 22 (Quarto, 10).]
1 [Reprinted by permission.]

North, Ward & Wagstaff, for the motion.
Creevy, Busbe & Clark, contra.

CHOATE, District Judge. This is an application for an order for a second meeting in composition. The composition proposed is one per cent. on the dollar, payable within ten days after the confirmation of the composition.

1. It is objected, first, that a composition for one per cent. should not be allowed; that it is a merely nominal composition and a fraud upon the law. The statute, however, allows any composition which is satisfactory to the requisite majority of the creditors and which is for the best interests of all concerned. In this case the debtor's statement does not show assets enough to pay one per cent. on the debts. The question whether the composition proposed is for the best interests of all concerned is one of the special subjects of inquiry at the second meeting, and in this case it is not so obviously against the interests of any class of creditors that the court should on this ground refuse to allow the creditors to pass on this question. Any objection on the part of any considerable class of creditors, made at the second meeting, to a composition which would relieve the debtor from ninety-nine per cent. of his debts, would doubtless receive the most careful consideration of the court, especially if there were any reasons to believe that the debtor could not receive his discharge in the regular course of proceedings.

2. A more serious question arises, whether, at the first meeting, the resolutions received the affirmative vote of one-half in number and three-fourths in value of the creditors assembled at the meeting. The register has reported that fifteen creditors were assembled, whose debts together amounted to seventy thousand and eighty-three dollars and ninety-six cents, and that of these eight voted for the resolutions, their debts being fifty-six thousand two hundred and seventeen dollars and fifty-two cents. Among the eight thus voting for the composition was one Frederick Lewis, the assignee of an insolvent firm of Bryce & Smith, who voted on his proof of debt, four thousand one hundred and twenty-seven dollars and fifty-eight cents, for money loaned and merchandise sold by Bryce & Smith to the bankrupt. It appeared, however, that, prior to the bankruptcy, the bankrupt had lent his notes without consideration to Bryce & Smith for an amount exceeding ten thousand dollars, which notes Bryce & Smith had procured to be discounted for their own benefit; and these notes, outstanding in the hands of third parties, for value and overdue, had been proved against the bankrupt, and constituted part of the sum total of seventy thousand and eighty-three dollars and ninety-six cents. The question is, should this debt due to Bryce & Smith be counted in computing the one-half of the creditors in number and three-fourths in value? It is insisted, on be-

half of those seeking to uphold the composition, that the accommodation notes cannot be off-set against this debt due to Bryce & Smith, because it is not a case of mutual debts or mutual credits, which it is said can alone be off-set under section 5073 of the Revised Statutes; that no obligation arises on the part of Bryce & Smith to pay the bankrupt from the mere fact that they have had and used his notes by way of accommodation; that when the bankrupt pays anything on the notes, then, and not till then, will Bryce & Smith become liable to pay him therefor; that up to the time of the bankruptcy nothing had been paid on the notes by the bankrupt, and that therefore there can be no set-off. The question, however, is not to be tested by section 5073 alone. That section provides for the simple and common case of set-off, and nothing more. It does not provide for, nor do its terms exclude any other possible equities that may arise between this estate and a creditor. And it can hardly be denied that the ordinary rules of equity that apply between debtor and creditor are to be administered by the bankrupt court in the adjustment of claims against and in favor of the estate. As regards these notes, Bryce & Smith are the principal debtors, and the bankrupt is the surety. If, now, an assignee of the bankrupt's estate were appointed, and the estate were being wound up in bankruptcy, and the assets were sufficient to pay a dividend of one per cent., what would be the rights of the assignee in equity, by reason of his paying the one per cent. on these notes, which Bryce & Smith are primarily bound to pay? As assignee he would owe, out of the common fund, to Bryce & Smith, forty-one dollars and twenty-seven cents, one per cent. on their debts; but he would be compelled to pay on their debts, on which the bankrupt was surety, one hundred dollars, being one per cent. on those debts. These obligations become due from the assignee at the same time and out of the same trust fund in his hands. Surely, upon the plainest principles of equity, he would have the right to apply the dividend coming to Bryce & Smith to the payment which he is compelled to make as their surety to other parties, the holders of these notes. Suppose the estate was not indebted to Bryce & Smith at all, but that Bryce & Smith, as now, had used the notes. Can there be any doubt whatever that the assignee, upon payment of the dividend on the notes, would be entitled to recover the amounts so paid of Bryce & Smith as money paid to their use? If he could not do so, he would not succeed to and take for the benefit of the creditors all the existing rights of the bankrupt; but it is evident that he does succeed to all those rights. If the equity to compel such reimbursement existed in the bankrupt, his bankruptcy cannot be any reason why Bryce & Smith should escape or be released from their obligations to reimburse their surety, who may pay their debt, to the

extent to which it is so paid. The bankruptcy does not change the nature of their obligation to pay, nor should the creditors, who have succeeded to all the rights of the bankrupt, be in a worse position, in case they discharge his obligation as surety in whole or in part, than the bankrupt would be.

Now, it is true that if the bankrupt were not in bankruptcy he could not set off any such payment made by him as surety, except against the whole amount due from him to the principal debtor. If he paid only one per cent. (in this case one hundred dollars), he could set off as between himself and Bryce & Smith only against their claim of four thousand one hundred and twenty-seven dollars. But in bankruptcy, and as against the assignee, their rights are different. By the bankruptcy their claim against the fund is not for the payment in full of their demand, but for the same proportion as other creditors receive—no more, no less. As such creditors, and in proportion to their claim as creditors, and not otherwise, they are entitled to share in the benefits of any remedy over which the assignee may have against the party for whose benefit the assignee has paid out money by reason of the bankrupt's obligation as surety. The accident, that they happen to be such party, surely cannot enlarge their equity as creditors. Again, the surety may always recover and have the benefit of any collateral securities or funds applicable to the payment of the debt, which may be placed by the principal debtor in the hands of the creditor. What possible reason is there, then, why he should not be allowed to apply to his reimbursement funds in his own hands belonging to the principal debtor? In fact, any dividend paid to the holders of these notes is to be regarded as money paid by the assignee for account of and at the request of Bryce & Smith. So far as such dividend goes, it is a payment of Bryce & Smith, and on their order, and to that extent it discharges the obligation of the assignee upon any dividend coming to them out of the bankrupt's estate. While, therefore, this may not be a case of mutual debts, it is a clear case for the equitable set off of the dividends or recoupment by the assignee from funds in his hands belonging to the principal debtors for moneys paid out on their account. There is no ground for the claim that the dividend paid on the notes should be off-set against the principal of the debt due to Bryce & Smith, under section 5073. Nothing can be off-set against that debt except a debt from Bryce & Smith to the bankrupt. These dividends are not such a debt; they were not paid by the bankrupt. The payment of them constitutes no obligation on the part of Bryce & Smith at the time of the bankruptcy, and nothing can be set off against a creditor's claim except a debt due the bankrupt. The obligation to repay the dividend on these notes paid by the assignee, first arises against Bryce & Smith and in favor of the assignee, and, when paid,

they must be set off, if against anything, against what he, as assignee, owes to them, which is a ratable proportion of the trust fund—that is, the equal dividend with all other creditors on their claim against the bankrupt. The question remains, whether the same principle of equitable recoupment would apply in favor of the bankrupt in case of a composition. There is no reason why it should not. A composition is to be regarded under the statute as substantially the distribution of the debtor's estate among his creditors, though effected in a different way, in a method theoretically more advantageous to both parties: to the debtor, by enabling him to continue in business without being stripped of everything; and to the creditors, by giving them the benefit of having the estate realized upon under the management of the bankrupt himself, instead of being sacrificed by being suddenly closed out by an assignee. A composition which is not, in effect, substantially a distribution of the bankrupt's estate among his creditors, ought not to be approved. It should be regarded as not within the meaning and purpose of the act. This is not inconsistent with some margin being left for the debtor, as a consideration for his services in winding up the estate, and an equivalent for possible losses that would be likely to result from winding up the estate in the ordinary way. A stipulated dividend is substituted for the uncertain dividend which would be the actual result of liquidation. But there is nothing in the act which would justify any different rule, in adjusting the relative rights and claims of creditors and the bankrupt under a composition, from those which govern between the assignee and the creditors. This equity now under discussion would remain the same.

The bankrupt, in paying the composition on these notes, does so as surety for Bryce & Smith; and, at the very time of such obligation arising to pay such composition on the notes, in lieu of the entire amount, he becomes also under obligation to pay the composition to Bryce & Smith, the principal debtors, on their claim, in lieu of the entire amount thereof. To say that he still owes the whole of his debt to Bryce & Smith, and that, therefore, he can only off set the dividends paid on the notes against that entire original debt, is as erroneous in this case as in the case of the assignee. At the same instant that he becomes liable to pay the composition, and that only on the notes, he becomes also liable for the composition only on the debt due to Bryce & Smith.

To set off the dividend only on the notes against the whole debt due Bryce & Smith, and pay the composition on the balance, would, in effect, give them by way of composition more than other creditors receive out of the estate. They would get the payment on the notes, which enures directly to their benefit, and also a dividend on their claim, very slightly reduced, which would obviously be unjust. They would have their obligation on the notes discharged out of the trust fund —that is, by the creditors as a whole, without reimbursing the money thus paid out for their account. Their equities as creditors, and their obligations as principal debtor for whom the bankrupt is surety, are precisely the same as in any other case of bankruptcy. It is the evident design of the statute that all bankrupts, and all persons proceeded against as bankrupts under the act, should be free to adopt and resort to this method of liquidating their estates, by means of a composition, if the creditors consent. To hold that the same equitable principles which apply to the administration of estates in bankruptcy do not apply in cases of composition, would virtually be to deny the benefits of a composition to many debtors who are largely indebted as sureties, for if in case of a composition persons who could not share in the estate in bankruptcy can share in the composition, this would in many cases render it impossible for the debtor to offer as favorable terms in composition to his creditors generally as they would have without a composition.

There is therefore on this ground, as well as on those above stated, strong reason for applying the same equitable rules to a composition as to a strict distribution in bankruptcy. For these reasons, therefore, the debt due Lewis, as assignee of Bryce & Smith, ought not to have been counted. Instead of the bankrupt owing him anything in case the composition is accepted and confirmed, he will be indebted to the bankrupt for the balance of composition to be paid on the notes over that which would become due on his claim. Having no interest in the proposed composition, Lewis is not to be regarded as a creditor who has any voice in the acceptance of the composition. Or if technically he is a creditor, and as such may vote, yet a majority made by his vote is merely a formal and not a substantial compliance with the terms of the statute. He has not a common interest with the creditors in the composition, and no composition carried by his vote should be considered as approved by a majority of the creditors within the meaning of the statute. Omitting Lewis from the list of creditors, the whole number present at the first meeting was fourteen, and there were but seven creditors who voted in the affirmative. On the ground, therefore, that the composition was not approved by the majority in number of the creditors, within the true meaning of the statute, the order for the second meeting should be refused.

3. It is unnecessary to decide the third point made against the composition, that the resolutions provided that any creditors examining the debtor should pay the fees and expenses of such examination; as the statute secures the right of any creditor to ask questions of the debtor, and makes it his duty to answer them, it is not very obvious how the creditors asking such questions can be

charged with the expense of doing so, the meeting being called by the debtor and for his benefit. But provisions are often made in composition resolutions beyond the power of the debtor and the creditors to stipulate for, and such provisions have been sometimes treated as not being of the substance of the composition, and so as not invalidating it. As the second meeting is refused, the effect of this attempt to charge the examining creditors with these expenses becomes unimportant. Motion denied.